01

02

03

04

05

06                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
07                                  AT SEATTLE

08  JORGE AQUINO,                          )
                                           )   CASE NO. C11-6031-RSM-MAT
09              Plaintiff,                  )
                                           )
10      v.                                  )   REPORT AND RECOMMENDATION
                                           )
11  MICHAEL J. ASTRUE, Commissioner of      )
    Social Security,                        )
12                                          )
                Defendant.                   )
13  _____ )

14          Plaintiff Jorge Aquino appeals the final decision of the Commissioner of the Social

15  Security Administration ("Commissioner") which denied his application for Supplemental

16  Security Income ("SSI") under Title XIV of the Social Security Act, 42 U.S.C. §§ 1381-83f,

17  after a hearing before an administrative law judge ("ALJ").   For the reasons set forth below, the

18  Court recommends that the Commissioner's decision be REVERSED and REMANDED for

19  further administrative proceedings.

20                          I.   FACTS AND PROCEDURAL HISTORY

21          Plaintiff was born in 1962 and was 47 years old on the amended alleged disability onset

22  date.   (Administrative Record ("AR") at 34, 148.)   He has less than a high school education

REPORT AND RECOMMENDATION
PAGE -1

01  and previously worked as a crab/fish butcher.  (AR 38, 49, 586, 171-72.)  Plaintiff served ten

02  years in prison and was released in 2009.  (AR 259.)  On October 29, 2009, he filed an

03  application for SSI, alleging disability beginning on March 1, 2001.  (AR 148-50.)

04      Plaintiff's application was denied initially and on reconsideration.  (AR 17.)  Plaintiff

05  requested a hearing, which took place on June 30, 2011.  (AR 31-55.)  On July 25, 2011, the

06  ALJ issued a decision finding plaintiff not disabled.  (AR 17-25.)  Plaintiff's administrative

07  appeal of the ALJ's decision was denied by the Appeals Council (AR 1-3), making the ALJ's

08  ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).

09  On December 17, 2011, plaintiff timely filed the present action challenging the Commissioner's

10  decision.  (Dkt. No. 1.)

11                              II.   JURISDICTION

12      Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

13  405(g) and 1383(c)(3).

14                              III. DISCUSSION

15      The Commissioner follows a five-step sequential evaluation process for determining

16  whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  At step one, it must be

17  determined whether the claimant has engaged in substantial gainful activity.  The ALJ found

18  plaintiff had not engaged in substantial gainful activity since October 29, 2009, his amended

19  alleged disability onset date.  (AR 19.)  At step two, it must be determined whether the

20  claimant suffers from a severe impairment.  The ALJ found plaintiff had the following severe

21  impairments:  radial nerve neuropathy and palsy of the right arm, generalized anxiety disorder,

22  depressive disorder, and personality disorder.  *Id*.  Step three asks whether the claimant's

REPORT AND RECOMMENDATION
PAGE -2

01  impairments meet or equal the criteria of a listed impairment.   The ALJ found that plaintiff's

02  impairments did not meet or equal a listed impairment.   (AR 20.)   If the claimant's

03  impairments do not meet or equal a listing, the Commissioner must assess residual functional

04  capacity ("RFC") and determine at step four whether the claimant has demonstrated an inability

05  to perform past relevant work.   The ALJ found plaintiff could perform less than the full range

06  of light work.   (AR 21.)   With his right hand, he could lift objects weighing no more than a

07  dish and he could not turn his wrist with this much weight.   *Id*.   In addition, plaintiff was

08  limited to routine, repetitive work with no public contact and should not be around children

09  unsupervised.   *Id*.   With that assessment, the ALJ found plaintiff was unable to perform his

10  past work.   (AR 24.)

11      If the claimant is able to perform his past relevant work, he is not disabled; if the

12  opposite is true, then the burden shifts to the Commissioner at step five to show that the

13  claimant can perform other work that exists in significant numbers in the national economy,

14  taking into consideration the claimant's RFC, age, education, and work experience.   Based on

15  the testimony of the vocational expert, the ALJ found plaintiff retained the ability to perform

16  work that exists in significant numbers in the national economy such as an egg sorter/candler

17  and, therefore, was not disabled.   (AR 24-25.)

18      Plaintiff argues that the ALJ erred in evaluating the opinions of state agency medical

19  consultant Robert Hoskins, M.D., and examining psychologist Norma Brown, Ph.D.;

20  evaluating the lay witness testimony; and relying on the vocational expert's testimony at step

21  five.   He requests remand for further proceedings.   The Commissioner argues that the ALJ's

22  decision is supported by substantial evidence, is free of legal error, and should be affirmed.

REPORT AND RECOMMENDATION
PAGE -3

01          A.   Medical Opinion Evidence

02          In general, more weight should be given to the opinion of a treating physician than to a

03    non-treating physician, and more weight to the opinion of an examining physician than to a

04    non-examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Where not

05    contradicted by another physician, a treating or examining physician's opinion may be rejected

06    only for "'clear and convincing'" reasons.  *Id*. (quoting *Baxter v. Sullivan*, 923 F.2d 1391,

07    1396 (9th Cir. 1991)).  Where contradicted, a treating or examining physician's opinion may

08    not be rejected without "'specific and legitimate reasons' supported by substantial evidence in

09    the record for so doing."  *Id*. (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

10          The ALJ may reject physicians' opinions "by setting out a detailed and thorough

11    summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

12    making findings."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).   Rather than merely

13    stating his conclusions, the ALJ "must set forth his own interpretations and explain why they,

14    rather than the doctors', are correct."  *Id*.

15          *1.  Robert Hoskins, M.D.*

16          On December 28, 2009, a state agency "single decisionmaker" completed a physical

17    residual functional capacity assessment.  (AR 631-38.)  He found plaintiff could lift twenty

18    pounds frequently and ten pounds occasionally, but could never push, pull, handle, or finger

19    with his right upper extremity.  (AR 632, 634.)  On April 1, 2010, Dr. Hoskins adopted the

20    RFC assessment, but added that "claimant, though a quasi partially one-armed worker, can still

21    perform light-level work parameters."  (AR 651.)

22          The ALJ found plaintiff "can lift objects weighing no more than a dish and he cannot

REPORT AND RECOMMENDATION
PAGE -4

01 turn his wrist with this much weight," but placed no limitations on the amount of pushing,

02 pulling, handling or fingering he could perform with his right hand.  (AR 21.)  Plaintiff argues

03 that the ALJ's RFC assessment is inconsistent with Dr. Hoskins's opinion.   He contends that

04 the ALJ erred when he reached a conclusion inconsistent with Dr. Hoskins's opinion but failed

05 to give any reason for rejecting it.

06        The Commissioner contends that because the RFC and the hypothetical question

07 presented to the vocational expert ("VE") included all of the physical limitations assessed by

08 Dr. Hoskins, the ALJ did not need to specifically address his opinion.   In the hypothetical to

09 the VE, the ALJ stated,

> And his most significant physical problem is his right hand and wrist.  It sounds
> like he can pick up only with his, his thumb and index finger, and he can lift up
> something as heavy as a dish with that, but can't manipulate it.   He can't turn his
> wrist and flex his wrist while he's got that in his hand.   So he can pick it up, but
> that's the extent of what he can do, something about the weight of a dish, and that's
> probably the extent of the use of his right hand.   He can use it as a block or
> something, but he can't manipulate items with it and he's right-handed.

14 (AR 49.)   In response, the VE testified that plaintiff could perform the job of egg candler, and

15 affirmed that this was a job plaintiff "could basically do one-handed."  (AR 50.)   The

16 Commissioner argues that the ALJ did not need to include limitations to pushing, pulling,

17 handling, or fingering because the ALJ described an individual with practically no use of his

18 right hand and including those limitations would have been redundant.   The Court agrees with

19 the Commissioner.

20        Although the RFC did not include all of the physical limitations assessed by Dr.

21 Hoskins, the hypothetical to the VE was more limited than the RFC and described an individual

22 with essentially no use of his right hand.   Further, the VE testified that a person could perform

REPORT AND RECOMMENDATION
PAGE -5

01  the job of egg candler one-handed.  Because the VE's job finding incorporated all of the

02  limitations assessed by Dr. Hoskins, the ALJ's error in failing to include these limitations in the

03  RFC assessment was harmless.  *See Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055

04  (9th Cir. 2006) (recognizing application of harmless error in Social Security context where a

05  "mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability

06  conclusion.").

07              *2.  Norman Brown, Ph.D.*

08          Dr. Brown completed two psychological evaluations for the Washington State

09  Department of Social and Health Services ("DSHS").  (AR 586-603, 671-84.)  She diagnosed

10  plaintiff with generalized anxiety disorder; major depressive disorder, recurrent, moderate; and

11  maladaptive behavior characteristic of antisocial personality disorder.  (AR 588, 673.)  She

12  assigned him a global assessment of functioning ("GAF")[1] score of 49, indicating serious

13  symptoms or a serious impairment in social, occupational, or school functioning.  DSM-IV-TR

14  at 34.  Dr. Brown opined that plaintiff would have "marked" limitations in his ability to relate

15  appropriately to co-workers and supervisors (noting he can be irritable and confrontive when

16  pushed by authority figures), to interact appropriately in public contacts (noting he is socially

17  avoidant), to respond appropriately to and tolerate the pressures and expectations of a normal

18  work setting (noting he has few coping skills to deal with stress), and to maintain appropriate

19  behavior in a work setting (noting he is easily frustrated with others and has low tolerance for

20  _____

21          1 The GAF score is a subjective determination based on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning."  AM. PSYCHIATRIC

22  ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (Text. Rev., 4th ed. 2000) ("DSM-IV-TR").

REPORT AND RECOMMENDATION
PAGE -6

01  conflictual encounters).   (AR 589, 674.)

02      The ALJ gave "limited weight" to Dr. Brown's opinion that plaintiff had marked

03  functional limitations, finding these limits "inconsistent with the claimant's own testimony

04  about his functioning."   (AR 23.)   Although the ALJ agreed that plaintiff had significant

05  difficulties interacting with the public, the ALJ found plaintiff's "successful work as a

06  dishwasher and interaction with his supervisor there and with guards while incarcerated belie

07  Dr. Brown's rating regarding the claimant's social interactions (apart from interactions with the

08  public), his ability to deal with normal stress of a work setting, and his ability to maintain

09  appropriate behavior in some settings."   *Id*.

10      The ALJ pointed out that plaintiff successfully performed work as a dishwasher at the

11  Coffee Club Diner during an Easter Seals Community Based Assessment ("CBA") in February

12  2011.   (AR 23, 53, 244-46.)   In a three-page letter, an Easter Seals employment specialist

13  reported that plaintiff was "very successful" in pace and production during the very busy lunch

14  time; showed no frustration, stress, or emotional instability; smiled regularly throughout his

15  shift; and was observed laughing and joking with other staff while on breaks.   *Id*.   In addition,

16  the ALJ noted that plaintiff denied having any problems getting along with supervisors while on

17  the job or with the prison guards while he was incarcerated.   (AR 23, 53.)   When asked at the

18  hearing whether he could perform the job of egg candler described by the vocational expert,

19  plaintiff testified, "I could probably tolerate that."   (AR 52.)

20      Plaintiff argues that his performance as a dishwasher during the CBA was not a valid

21  reason for rejecting Dr. Brown's opinion because the work was done under "special

22

REPORT AND RECOMMENDATION
PAGE -7

01   conditions," citing 20 C.F.R. § 416.973(c).[2]   Plaintiff asserts that he was only assessed for 18

02   hours (three weeks, two days a week, three hours a day), he had a job coach with him the entire

03   time, and the job was slow paced and easy going.   AR 244-46.

04        Although a claimant's work may not show the ability to engage in substantial gainful

05   activity if it is performed under special conditions, "work done under special conditions may

06   show that [a claimant has] the necessary skills and ability to work at the substantial gainful

07   activity level."   20 C.F.R. § 416.973(c).   Here, the ALJ did not find that plaintiff had engaged

08   in substantial gainful activity at step one.   Rather, the ALJ found that plaintiff's successful

09   work as a dishwasher, though temporary, was inconsistent with Dr. Brown's opinion that

10   plaintiff had marked limitations in his ability to deal with normal stress of a work setting, and

11   his ability to maintain appropriate behavior in some settings.   (AR 23.)   The ALJ may reject a

12   medical opinion that is inconsistent with other evidence of record, such as a claimant's

13   activities.   *See Morgan v. Comm'r Soc. Sec. Admin*., 169 F.3d 595, 601-02 (9th Cir. 1999).

14   The ALJ properly found plaintiff's work as a dishwasher showed he had the capacity to relate

15   appropriately to coworkers and supervisors, deal with normal stress, and maintain appropriate

16   behavior, inconsistent with Dr. Brown's opinion.

17        Plaintiff further argues that the ALJ erred in relying on a portion of the employment

18   ────────────────────

19        2  The regulations provide that "[i]f your work is done under special conditions, we may find that it does not show that you have the ability to do substantial gainful activity."   20 C.F.R. §§ 404.1573(c), 416.973(c).   Examples of special conditions include: requiring or receiving special assistance from other employees in performing work; working irregular hours or taking frequent rest periods; getting special equipment or being assigned work especially suited to the claimant's impairment; working only because of specially arranged circumstances; working at a lower standard of productivity or efficiency than other employees; or working, despite an impairment, because of a family relationship, association with an employer, or an employer's concern.   *Id*.

REPORT AND RECOMMENDATION
PAGE -8

01  specialist's letter which stated that, "*Matthew* showed no frustration, no stress and no emotional

02  instability.  *Matthew* was in a good mood and smiled regularly throughout his shift.  I

03  observed *James* laughing and joking with other staff while on breaks."  (AR 245 (emphasis

04  added).)   Plaintiff contends that because this portion of the letter does not refer to him, the ALJ

05  erred when he relied on the statement that plaintiff smiled regularly and was observed laughing

06  and joking.  (Dkt. No. 16 at 5.)    The Court agrees with the Commissioner that the

07  misdesignation is no more than a typographical or transcription error and does not negate the

08  entire report.   The employment specialist clearly wrote the letter about plaintiff, repeatedly

09  referencing plaintiff by name.   (AR 244-46.)    Furthermore, the employment specialist

10  specifically indicated that plaintiff was able to perform work in the community despite his

11  mental impairments, stating,

12      In closing, Jorge did very well during this CBA.  He showed he possesses the
        skills that would enable him to become hirable in the community.  He seemed to
13      become very comfortable in the environment he worked in.  On day one he
        seemed a bit reclusive, but opened up very quickly.  He did comment that crowds
14      may be an issue, but this was not seen by either me or the other staff.  Jorge has the
        capability to become a productive and valued employee at any establishment when
15      he feels comfortable and understands how to perform the tasks he is assigned.

16  (AR 246.)   Even without the misdesignated portion of the letter, the ALJ did not err in finding

17  plaintiff's successful work as a dishwasher was inconsistent with Dr. Brown's opinion.

18      Plaintiff also disputes the ALJ's finding that Dr. Brown's opinion is inconsistent with

19  plaintiff's testimony of his functioning, arguing that his testimony supports the limitations in

20  pressures and expectations attributed to him by Dr. Brown.   Plaintiff asserts that he testified

21  that the job as dishwasher was slow paced and easy going, and that if the job had been busy, he

22  would have struggled a little.  (AR 42.)   He also testified, "[j]ust the fact that it would be a lot

REPORT AND RECOMMENDATION
PAGE -9

01  of hand/eye coordination and try to hurry things, it would probably slow me down just a bit."

02  *Id*.

03      Although plaintiff testified that his dishwashing job was slow and easy, he said that he

04  performed well and received a great report.  (AR 22, 40.)  Plaintiff also indicated that he had

05  no problems interacting with supervisors or with the prison guards while incarcerated.  (AR 22,

06  53.)  In addition, plaintiff testified that he did not see any problem doing jobs such as the egg

07  candler described by the vocational expert.  (AR 23, 52.)  Substantial evidence supports the

08  ALJ's finding that Dr. Brown's opinion that plaintiff had marked functional limitations was

09  inconsistent with plaintiff's own testimony of his functioning.   As the Commissioner argues,

10  plaintiff merely presents an alternative interpretation of the evidence.   However, when the

11  evidence is susceptible to more than one rational interpretation, it is the Commissioner's

12  conclusion that must be upheld.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

13  While it is possible to construe the evidence as urged by plaintiff, it is not possible to conclude

14  that his interpretation is the only rational interpretation.   The ALJ did not err in finding Dr.

15  Brown's opinion inconsistent with plaintiff's testimony.

16      Plaintiff also contends that Dr. Brown's testimony is consistent with other evidence in

17  the record, such as the treatment notes from Kitsap Mental Health Services.   It is difficult to see

18  plaintiff's argument as anything more than a request to reweigh the evidence and to give greater

19  weight to the findings plaintiff believes support his claim of disability.   However, it is not the

20  function of this Court to consider whether there is substantial evidence to support his theory of

21  the case, but, rather, whether substantial evidence supports the ALJ's findings.  *Flaten v. Sec'y*

22  *of Health & Human Servs*., 44 F.3d 1453, 1457 (9th Cir. 1995).  The ALJ gave specific,

REPORT AND RECOMMENDATION
PAGE -10

01  legitimate reasons supported by substantial evidence for rejecting Dr. Brown's opinions.

02  Accordingly, this claim does not warrant reversal.

03      B.  Lay Witness Testimony

04      Plaintiff argues the ALJ did not provide any germane reasons for rejecting the lay

05  testimony of his sister, Sandra Aquino.   In order to determine whether a claimant is disabled,

06  an ALJ may consider lay witness sources, such as testimony by parents, siblings, and friends.

07  *See* 20 C.F.R. §§ 404.1513(d), 416.913(d).   Lay witness testimony as to a claimant's

08  symptoms or how an impairment affects ability to work is competent evidence that cannot be

09  disregarded without comment.   *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).   To

10  discount lay witness testimony, the ALJ must "provide reasons germane to each witness."   *Id*.

11      Ms. Aquino, completed a third-party function report in March 2009, while plaintiff was

12  incarcerated.  (AR 178-85.)   She indicated that plaintiff's conditions affect his ability to lift,

13  squat, reach, kneel, talk, remember, complete tasks, concentrate, understand, follow

14  instructions, use his hands, and get along with others.  (AR 183.)   She stated, "Lifting is only

15  2-3 lb, doesn't reach with right arm, kneeling can't get up, talking very [sic] to understand,

16  memory not good, tasks can't finish, no concentration, understand not following instructions,

17  needs help using hand . . . hard to talk to others."   *Id*.   Ms. Aquino also noted that plaintiff

18  does not like to socialize, stresses out easily and has anxiety, but gets along with authority

19  figures.  (AR 183-84.)

20      The ALJ assigned limited weight to this report, stating that plaintiff's "daily activities

21  are inconsistent with the alleged limitations."  (AR 22.)   The Commissioner argues that

22  inconsistency between a claimant's daily activities and a lay witness's statement is a germane

REPORT AND RECOMMENDATION
PAGE -11

01 reason to discredit the lay witness.  *Carmickle v. Comm'r Soc. Sec. Admin*., 533 F.3d 1155,

02 1163-64 (9th Cir. 2008).   However, the ALJ did not identify any inconsistencies.

03       The ALJ noted that "Ms. Aquino reported that, although limited by his incarceration,

04 the claimant prepared simple meals for himself.  He did his own laundry.  With her help for

05 transportation, the claimant did grocery shopping twice a week and attended doctor

06 appointments.  His sister reported that the claimant got along well with authority figures."

07 (AR 22.)   It is unclear how the limitations Ms. Aquino alleged are inconsistent with the daily

08 activities she described plaintiff as doing.   On remand, the ALJ must reexamine Ms. Aquino's

09 report and provide germane reasons if he wants to reject her testimony again.  *Stout*, 454 F.3d

10 at 1056 (holding "where the ALJ's error lies in a failure to properly discuss competent lay

11 testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless

12 it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could

13 have reached a different disability determination.").

14       C.  <u>Step Five</u>

15       At step five, the burden of production shifts to the Commissioner to show that the

16 claimant can perform other work that exists in significant numbers in the national economy,

17 given the claimant's age, education, work experience, and RFC.  *Tackett v. Apfel*, 180 F.3d

18 1094, 1100-01 (9th Cir. 1999).   The Commissioner may meet this burden by referring to the

19 Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2, or by eliciting the

20 testimony of a vocational expert ("VE").  *Id.* at 1101.   In order for the VE's testimony to

21 constitute substantial evidence, the ALJ must pose a hypothetical "that reflects all the

22 claimant's limitations."  *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir.1995).   The ALJ's

REPORT AND RECOMMENDATION
PAGE -12

01   depiction of the claimant's impairments must be "accurate, detailed, and supported by the

02   medical record."   *Tackett*, 180 F.3d at 1101.

03         Pursuant to Social Security Ruling ("SSR") 00-4p, an ALJ has an affirmative

04   responsibility to ask whether a VE's testimony conflicts with Dictionary of Occupational Titles

05   (4th ed. 1991) ("DOT"), and, if there is a conflict, whether there is a reasonable explanation for

06   such conflict.   *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("[W]e address the

07   question whether, in light of the requirements of SSR 00-4p, and ALJ may rely on a vocational

08   expert's testimony regarding the requirements of a particular job without first inquiring whether

09   the testimony conflicts with the Dictionary of Occupational Titles.   We hold than an ALJ may

10   not.").   As stated by the Ninth Circuit, "'[A]n ALJ may rely on expert testimony which

11   contradicts the DOT, but only insofar as the record contains persuasive evidence to support the

12   deviation.'"   *Id*. at 1153 (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995)); *see*

13   *also Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) ("We merely hold that in order for

14   an ALJ to rely on a description in the [DOT] that fails to comport with a claimant's noted

15   limitations, the ALJ must definitively explain this deviation.").

16         At the hearing, the ALJ asked the VE whether an individual with plaintiff's age,

17   education, work experience, and RFC could perform any unskilled work.   (AR 49-50.)   In

18   response, the VE testified that the individual could perform the job of egg candler (DOT

19   529.687-074) with 37,500 jobs in the national economy and 4,800 jobs in the State of

20   Washington.   (AR 50.)   An egg candler:

21         Inspects eggs to ascertain quality and fitness for consumption or incubation,
           according to prescribed standards:   Observes eggs moving on conveyor over light,
22         or holds eggs before shielded light or rolls them over lighted glass plate to render

REPORT AND RECOMMENDATION
PAGE -13

01      egg translucent.  Observes shell color and texture, and internal characteristics,
        such as streaks, shadings, discolorations, size and position of yolk, and size of air
02      cell.  Places spoiled and substandard eggs in cases.  Packs salable eggs in cartons
        or releases them on conveyor belt for packing by other workers.  May break
03      substandard eggs in container for further processing.  May grade eggs according to
        size, shape, color, and weight and be designated Egg Grader (any industry).
04

05   DOT 529.687-074.  The VE further testified that the job of egg candler could be performed

06   with only one hand.  (AR 51.)

07          After the hearing, the ALJ allowed plaintiff to submit additional evidence regarding the

08   VE's testimony.  (AR 25, 266-88.)  The evidence included a letter from plaintiff's attorney

09   and the following attachments:  (1) an email and job description from Wilcox Farms; (2) an

10   email from Willamette Egg Farms; (3) a job description from Job Browser Pro; and (4) the job

11   search results with keyword "egg" from Washington State Employment Security Division

12   Worksource.  (AR 266-90.)  The ALJ considered this evidence but found the VE's testimony

13   from the hearing "more persuasive," noting that the VE was available for cross examination, the

14   VE was a qualified expert who had a good foundation for his opinion, and his testimony was

15   consistent with the DOT.  (AR 25.)  Although the ALJ stated that the VE's testimony was

16   consistent with the information contained in the DOT, plaintiff accurately observes that the ALJ

17   failed to affirmatively ask the VE whether his testimony conflicted with the DOT.

18          Plaintiff argues that the ALJ's decision is not supported by substantial evidence because

19   the VE's testimony that plaintiff could perform the job of egg candler with only one hand is in

20   conflict with the description of the job in the DOT.  Plaintiff asserts the DOT indicates

21   working as an egg candler requires reaching, handling, and fingering, and average manual

22   dexterity, which he can only perform with one hand.  He contends that evidence submitted

REPORT AND RECOMMENDATION
PAGE -14

01   after the hearing from experts in the egg farm industry further bolsters his assertion that egg

02   candling requires use of both hands, and that an individual with limited use of his right arm

03   would not be able to perform the job.

04        The Commissioner contends that the ALJ's failure to affirmatively ask the VE whether

05   his testimony conflicted with the DOT can be deemed harmless because plaintiff has not

06   demonstrated any actual conflict with the DOT.   *Rushing v. Astrue*, 360 Fed. Appx. 781, 2009

07   WL 5033730 (9th Cir. 2012) (holding failure to ask VE about consistency with DOT harmless

08   where plaintiff did not allege the VE's testimony was actually inconsistent with the DOT).

09   The Commissioner asserts that although the DOT provides that reaching, handling, fingering,

10   and feeling may be required two-thirds of the time, it does not state that the job requires the use

11   of both hands.   Further, even if there was a conflict, the VE specifically testified that the job

12   could be performed with only one hand.

13        While the Commissioner is correct that the DOT does not explicitly state that the job of

14   egg candler requires the use of both hands, the DOT does indicate that an egg candler packs

15   eggs in cartons and may break substandard eggs in container, which generally requires the use

16   of both hands.   Furthermore, the ALJ specifically allowed plaintiff to submit additional

17   evidence after the administrative hearing which indicates that egg candling requires good use of

18   both hands.   (AR 266-67, 271-74.)   This evidence calls into question the VE's testimony that

19   egg candling can be performed with only one hand.   Thus, the ALJ erred by relying on the

20   VE's testimony, without more, as a basis for deviating from the DOT.

21        Even if the ALJ did not err by relying on the VE's testimony to deviate from the DOT,

22   the ALJ erred by failing to acknowledge the conflict and explaining how he resolved it in his

REPORT AND RECOMMENDATION
PAGE -15

01  decision.   An ALJ may rely upon a VE's testimony provided that the record reflects an

02  adequate basis for doing so.   *See Massachi*, 486 F.3d at 1153.   The ALJ's written decision

03  inaccurately provides that the VE's testimony was consistent with the DOT, and includes no

04  further discussion.   (AR 25.)   As a result, the Court cannot determine whether substantial

05  evidence supports the ALJ's step five finding that plaintiff could perform other work.   *See id.*

06  at 1153-54.   This was reversible error.   Accordingly, remand is appropriate to allow the ALJ

07  to reevaluate what jobs, if any, plaintiff can perform.   On remand, the ALJ shall solicit the

08  testimony of a VE.   If there is any conflict between the VE's testimony and the DOT, the ALJ

09  shall discuss the conflict and the ALJ's resolution of it in the written decision.[3]

10                                       IV.   CONCLUSION

11          For the foregoing reasons, the Court recommends that the Commissioner's decision be

12  REVERSED and REMANDED for further administrative proceedings not inconsistent with the

13  Court's instructions.   A propose order accompanies this Report and Recommendation.

14          DATED this 9th day of July, 2012.

15

16                                                      Mary Alice Theiler
                                                        United States Magistrate Judge

17

18

19

20
      _____
21          3 Because the Court finds that the ALJ erred in finding plaintiff could perform work as
      an egg candler, the Court does not address plaintiff's contention that the ALJ erred in finding
      there were a "significant number" of egg candler jobs in the national and regional economy.
22  On remand, plaintiff may raise the apparent conflict between the VE's testimony and the DOT
      at the hearing.

REPORT AND RECOMMENDATION
PAGE -16